ORIGINAL

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BID PROTEST**

FILED
FEB 2 6 2008
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DCX-CHOL ENTERPRISES, INC. | ) |
| Plaintiff, | ) |
| v. | ) CFC No. 08-109 C |
| THE UNITED STATES | ) Judge________ |
| Defendant. | ) |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIONS

Submitted by:

Richard D. Lieberman
McCarthy, Sweeney & Harkaway, PC
2175 K St., NW, Suite 600
Washington, DC 20037
Tel: 202-775-5560
Fax: 202-775-5574

Counsel to Plaintiff, International Management Services, Inc.

Of Counsel
Nicole S. Allen
McCarthy, Sweeney & Harkaway, PC
2175 K St., NW, Suite 600
Washington, DC 20037
Tel: 202-775-5560
Fax: 202-775-5574
nallen@mshpc.com

February 26, 2008

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................iii-iv

I. QUESTION PRESENTED ....................1

II. STATEMENT OF THE CASE ....................2

III. FACTUAL BACKGROUND ....................3

IV. STANDARD OF REVIEW ....................5

V. ARGUMENT

A. In Violation of FAR 19.102 and the Small Business Act, 13 C.F.R. § 121.402(b) DSCR Failed to Assign the Correct NAICS Code to the Solicitation Even Though the Contracting Officer Was Fully Aware of This Issue ....................6

B. The OHA Judge Acted In An Irrational and Arbitrary Manner in Upholding the CO's NAICS Code Selection....................10

C. Standards For Injunctive Relief And Relief Requested ....................11

1. DCX Will Suffer Immediate and Irreparable Injury if the Court Does Not Grant the Requested Injunctive Relief ....................12

2. It is Likely That DCX Will Succeed on the Merits in This Litigation....................13

3. The Harm to DCX Far Outweighs the Harm to the Government or Any Third Party ....................13

4. It is in the Public's Interest to Grant the Injunction ....................14

VI. CONCLUSION....................15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Blue & Gold Fleet, LP v. U.S.* 70 Fed. Cl. 487 (2006) .....5

*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 492 (1971) .....6

*Eagle Design and Mgmt., Inc. v. U.S.*, 57 Fed.Cl. 271 (2002) .....5, 10

*Essex Electro Engineers, Inc. v. United States,* 3 Cl. Ct. 277 (1983) .....13

*Federal Management Systems v. United States,* 61 Fed. Cl. 364 (2004) .....5

*Isratex, Inc. v. United States*, 25 Cl. Ct. 223 (1992) .....10, 12

*Magnavox Elec. Sys. Co.. v. U.S.*, 26 Cl. Ct. 1373 (1992) .....12, 13, 14

*Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952 (Fed. Cir. 1984) .....12

*Quality Transport Serv., Inc. v. United States,* 12 Cl. Ct. 276 (1987) .....12

*Red River Service Corp. v. U.S.*, 60 Fed.Cl. 532 (2004) .....6

*Zenith Radio Corp. v. United States,* 710 F.2d 806 (Fed. Cir. 1983) .....12

## ADMINISTRATIVE DECISIONS

*Good Food Service, Inc.* B-253161, August 19, 1993 1993 WL 325125 .....7, 8

NAICS Appeal of DXC-CHOL Enterprises, Inc., SBA No. NAICS-4893 (2008) .....4, 11

**STATUTES**

5 U.S.C. § 706(2)(A) .......... 5

15 U.S.C. § 644 .......... 7

28 U.S.C. § 1491(b)(4) .......... 5

**REGULATIONS**

13 C.F.R. § 121.402(b) .......... 2, 4, 6, 7, 8, 9, 11

FAR 19.102 .......... 6, 7, 9, 11

FAR 19.501 .......... 7

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DCX-CHOL ENTERPRISES, INC. <br> Plaintiff, <br> v. <br> THE UNITED STATES <br> Defendant. | CFC No. ________ <br> Judge__________ |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIONS**

**COMES NOW** Plaintiff DCX-CHOL Enterprises, Inc. ("DCX") by and through undersigned counsel, and hereby files this Memorandum of Points and Authorities in Support of its Motion for Preliminary and Permanent Injunctions.

## I. QUESTIONS PRESENTED

a. Was the Defense Supply Center Richmond's ("DSCR") designation of North American Industry Classification System ("NAICS") code 334419 in Solicitation No. SPM4A6-08-R-0148 for Cable Assemblies, Special Purpose, Electrical (the "Solicitation") a violation of statute and regulation?

b. Was the Small Business Administration Office of Hearings and Appeals' ("OHA") decision upholding such a NAICS code designation irrational,

arbitrary and based on a clear error of fact or law.

c. Should the Court require DSCR to issue an amendment to the Solicitation with the correct NAICIS Code of 336413 in accordance with law and regulation?

## II. STATEMENT OF THE CASE

The DSCR Solicitation was issued as a total small business set aside for "Cable Assembl[ies], Special Purpose, Electrical," with an original NAICS code designation of 335931, which covers a current-carrying wiring device in the category of manufacturing and has a corresponding employee size standard of 500 employees or less. (Solicitation at 2). The cable assembly is identified in the Solicitation by National Stock Number ("NSN") 6150-01-304-5490, and is a component of the F/A 18 Hornet Aircraft. More specifically, the cable assembly is the communication conduit between the aircraft cockpit and the missile. The importance of this cable to the function of the weapon system of the F/A 18 Hornet Aircraft is highlighted by the Solicitation's identification of the part as a "Critical Application Item."

The Contracting Officer's ("CO") selection of NAICS code 335931, and then subsequent designation of NAICS code 334419, was in error, as neither code is specific to the part at issue. Furthermore, neither NAICS code selected by the CO "best describes the principal purpose of the product or service being acquired" as required by 13 C.F.R. § 121.402(b). The CO failed to use the proper NAICS designation of 336413, which covers parts specific to aircraft, rather than general electrical parts or components which

may be used in any number of items. Code 336413 best describes the principal purpose of the product being acquired.

## III. FACTUAL BACKGROUND

Prior to the issuance of the Solicitation, a representative of DCX contacted DSCR's Contract Specialist, Brenda Noe, to discuss what DCX believed to be an improper NAICS code designation in the announcement. Despite DCX's attempt to have the proper NAICS code assigned to the Solicitation prior to its release, the Solicitation was issued on January 23, 2008 without any changes. As a result, on January 24, 2008, DCX submitted a NAICS appeal to the Small Business Administration's Office of Hearings and Appeals ("OHA"), in which DCX contended that the proper NAICS classification was 336413, a code that is more specific to the part at issue, and which covers "Other Aircraft Part[s] and Auxillary Equipment Manufacturing." This code best describes the principal nature of this critical application item for the F/A 18 weapon system.

In response to, and in partial agreement with, DCX's appeal, DSCR's Contracting Officer ("CO") issued an amendment to the Solicitation, assigning a new NAICS code of 334419, which covers "Other Electronic Component Manufacturing." The Contracting Officer, Mr. Ernest Hood, explained this change in a letter to the OHA dated February 7, 2008, which stated that:

> The required Cable Assembly, Special Purpose, Electrical is used on the F/A 18 Hornet aircraft. All cable assemblies perform the same or similar functions and use similar functions and use similar production processes, but actual design/size/configuration is tailored by the component manufacturer to a specific weapon system. NAICS code 334419, Other Electronic Component

> Manufacturing, best describes the required item. NAICS code 336413 is appropriate for aircraft assemblies or auxiliary parts unique to aircraft and is typically used for aircraft structural components, propellers, armament racks, and similar items

The problem with the CO's new NAICS designation was that rather than choosing the code that is specific to the aircraft part identified by the Solicitation, the CO selected a much more general code that covers any number of electronic components.

Faced with a second incorrect NAICS code, DCX submitted a second appeal to OHA, again alleging that 336413 is the proper NAICS code for the Solicitation based on 13 C.F.R. § 121.402(b) and again requesting that the CO be directed to amend the Solicitation accordingly. In a perfunctory, arbitrary and conclusory decision, the OHA Judge determined that even though NAICS code 334419 does not specifically cover cable assemblies, it does cover various electronic components which are "arguably" similar to the part identified by the Solicitation. According to the OHA Judge, even though NAICS code 33419 "does not specifically mention cable assemblies, it does list 'Harness assemblies for electronic use manufacturing,'" and is therefore the proper code because "a harness assembly and a cable assembly are *arguably* similar." NAICS Appeal of DXC-CHOL Enterprises, Inc., SBA No. NAICS-4893 ("OHA Decision"), at 4. (emphasis added). As such, without including any rationale or reasons, the OHA Judge upheld the CO's NAICS code determination.

On February 20, 2008, DSCR issued a third amendment to the solicitation extending the deadline for submission of offers to March 3, 2008. This protest of the Solicitation is being submitted prior to the closing date for offers, and is therefore timely. See Blue & Gold Fleet, LP v. United States, 70 Fed. Cl. 487, 513 (2006).

## IV. STANDARD OF REVIEW & JURISDICTION

The applicable standard of review in bid protests is that an agency's procurement decision will not be disturbed unless it is shown to be "arbitrary, capricious and abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A), 28 U.S.C. § 1491(b)(4). A bid protest may challenge two possible improper actions: the rationality of the substance of the agency's decision and the procedures mandated by regulation for conduct of the procurement. Fed. Mgmt. Sys. v. United States, 61 Fed. Cl. 364, 366 (2004) (citing Banknote Corp., Inc. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004)).

In order to establish a violation of regulation or procedure, the prospective bidder must demonstrate a "clear and prejudicial violation of applicable statutes or regulations." Id.

While the decision of the procuring agency is entitled to a presumption of regularity, that presumption does not shield the agency from a "thorough, probing, in-depth review." See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971).

The Court has jurisdiction under the Tucker Act to review a CO's NAICS code selection, having previously found that "no statutory authority immunizes a Contracting

Officer's NAICS Code selection from review under the Tucker Act, utilizing the APA standard of review." Red River Service Corp. v. U.S., 60 Fed.Cl. 532, 538 (2004). The Court may also find that a decision of an OHA Judge is arbitrary and capricious and therefore lacking in merit, where the Judge fails to properly apply the law by examining the components of 13 C.F.R. § 121.402(b). See Eagle Design and Mgmt., Inc. v. U.S., 57 Fed.Cl. 271, 273-274 (2002). Furthermore, Plaintiff in this case is an interested party for the purposes of bringing an action in this court pursuant to the Tucker Act and pursuant to the APA, because DCX "presents this matter for determination *before award has been made*, and is ready and willing to compete for the contract." Ceres Environmental Services, Inc. v. U.S., 52 Fed.Cl. 23, 32. (emphasis in original). As this Court has noted, where the Plaintiff is challenging the terms of the solicitation that have "purportedly deterred it from competing and the remedy [Plaintiff] seeks is the opportunity to compete under a revised solicitation," this set of circumstances situate Plaintiff as an interested party to protest the terms of the solicitation. *Id.* (citations omitted).

Plaintiff is lawfully permitted to compete if the NAICS code is 336413 (1,000 employees) but Plaintiff may not compete if the NAICS code is 334419 (500 employees). Accordingly, the requisite prejudice is present, and Plaintiff may bring this protest.

## V. ARGUMENT

### A. IN VIOLATION OF FAR 19.102 AND THE SMALL BUSINESS REGULATIONS, 13 C.F.R. § 121.402(b) DSCR FAILED TO ASSIGN THE CORRECT NAICS CODE TO THE SOLICITATION EVEN THOUGH THE CONTRACTING OFFICER WAS FULLY AWARE OF THIS ISSUE

The purpose of the Small Business Act with respect to government acquisitions is to ensure that a fair proportion of all government contracts be placed with small business concerns. 15 U.S.C. § 644. In order to implement this requirement, FAR 19.501 states that the "purpose of small business set-asides is to award certain acquisitions exclusively to small business concerns."[1] The Plaintiff raises no issue with respect to the Solicitation being a small business set-aside. Plaintiff does, however, note that the proper NAICS Code designation of 336413 has a 1,000 employee size standard, a standard within which Plaintiff is a small business.

Plaintiff takes issue with the fact the CO selected an improper NAICS code, not once, but twice. The CO's NAICS code selection is a direct violation of FAR 19.102, which requires the CO to select the classification "whose definition best describes the *principal nature of the product* or service being acquired…." (emphasis added). In making this selection, the CO must follow the procedures outlined in 13 C.F.R. § 121.402(b) by giving primary consideration to the "NAICS United States Manual, the product or service description in the solicitation and any attachments to it, *the relative importance of the components* of the procurement making up the end item being procured, and *the function of the goods or services being purchased.*" (emphasis added).

In this case, the Solicitation correctly identifies the component as a "Critical Application Item," which is defined by the Defense Logistics Agency Instructions as "an item that is essential to weapon system performance or operation, or the preservation of life or safety of operating personnel, as determined by the Military Services." Joint

[1] The provisions of FAR Subpart 19.5 were issued to "implement the Small Business Act requirement that a 'fair proportion' of government contracts be placed with small business

Instruction DLAI 3200.1, October 31, 2002, "Engineering Support Instructions for Items Supplied By Defense Logistics Agency," § V.a. (Appendix - A). However, the CO fails to take the next step of correctly classifying this critical application item as an aircraft component under NAICS Code 336413.

As previously explained, the component that is the subject of the Solicitation is being procured by DSCR for use on an F/A 18 Hornet Aircraft. The component is a cable assembly that operates as the communication conduit between the aircraft cockpit and the missile. Without the cable, the aircraft's pilot would be unable to launch a missile, hence, the designation of this component as a critical application item is proper. What the CO did not take into account is the relative function of the component or the function of the good being purchased when selecting the NAICS code, thus violating FAR 19.102 and 13 C.F.R. § 121.402(b).

Pursuant to 13 C.F.R. § 121.402(b), in selecting the proper NAICS code the CO should also consider other factors including "previous Government procurement classifications of the same or similar products or services...." Two previous solicitations wholly support Plaintiff's assertion that NAICS code 336413 is in fact the proper code. On June 27, 2006, the Department of the Air Force, which unquestionably has extensive knowledge of aircraft parts and components, issued a Request for Quotations ("RFQ"), FA8517-06-Q-70504, as a small business set-aside with a NAICS Code of 336413 for "Aircraft Components and Accessories." The component identified by this RFQ was a "Special Purpose Electrical Cable Assembly," RFQ at 3, which is the same designation given in the Solicitation presently at issue. The pre-solicitation notice for this RFQ

---

concerns." Good Food Service, Inc., B-253161, August 19, 1993, 1993 WL 325125.

identified the component as a special purpose electrical cable for use in a C-5A military airplane.

Similarly, a pre-solicitation notice issued by the Defense Logistics Agency in 2004 for Solicitation No. SP0475-04-R-2378, provided a classification code of "16 – Aircraft components & Accessories," with a NAICS code of 336413, "Other Aircraft Parts and Auxiliary Equipment Manufacturing." The pre-solicitation notice explained that "Defense Supply Center Richmond (DSCR) intends to procure a military-unique national stock number for the Night Vision Imaging System. The NSN is 6150 01 055 9916, *cable assembly, special*." (emphasis added).[2]

Given the fact that there have been previous procurements involving special purpose cable assemblies which have been assigned the NAICS code 336413 for Aircraft parts, there is no legitimate reason why in the present case a cable that is actually used on a specific aircraft and which serves a very specialized and highly important and critical purpose would not be assigned the NAICS code which is most fitting. Where there is a NAICS code which provides a specific fit for the component being sought in a procurement, there is no reason why a Contracting Officer should be using generalized codes that encompass cables that could be utilized for any number of purposes, rather than using a code that is specifically tailored to parts or components used on an aircraft. In selecting general codes over a code that takes into account the "*importance of the components*" and "*the function of the goods or services being purchased,*" the CO acted

[2] This solicitation was issued by the *same* agency (DSCR) that issued the solicitation protested herein.

in an irrational and arbitrary manner, and in violation of FAR 19.102 and 13 C.F.R. § 121.402(b).

Finally, the Contracting Officer's assertion in his February 7, 2008 letter to OHA, is inconsistent with the purpose of the cable assembly at issue. The CO stated that "[a]ll cable assemblies perform the same or similar functions and use similar functions and use similar production processes, but actual design/size/configuration is tailored by the component manufacturer to a specific weapon system." As a critical application item that must be specially produced and tailored to the system *or the F/A 18 weapon will not work*, this cable is truly "special purpose" *and was specifically so designated* in the solicitation. If the cable had been "general purpose" it would have been so designated, and arguably might have fit within the NAICS code selected by the CO. It is simply irrational for the CO to believe that a cable assembly that launches a military missile is similar on an F-15, and F/A 18, an F-14, an F-22, or any other high performance fighter aircraft. Each has a special application, each is a critical application item, and each must be designated by the proper NAICS code.

## B. THE OHA JUDGE ACTED IN AN IRRATIONAL AND ARBITRARY MANNER IN UPHOLDING THE CO'S NAICS CODE SELECTION

In rendering a decision on DCX's NAICS code appeal, the OHA Judge should have "examined each of the components of the regulation and provided an explanation as to each element of the regulation." Eagle Design, supra, at 274. The OHA Judge, much like the CO, acted in an irrational and arbitrary manner by failing to take into account "previous Government procurement classifications of the same or similar products and

services…." Nowhere in the OHA Judge's decision is there a discussion of similar past procurements.

Instead, the OHA Judge, without citing to the various factors detailed in 13 C.F.R. § 121.402(b), simply provided the NAICS code definitions for 334419 and 336413 as contained in the NAICS manual. The OHA Judge then reasoned that because 336413 "does not encompass all specialized components made for aircraft," it is not the proper NAICS code. The Judge went on to contend that even though NAICS code 33419 "does not specifically mention cable assemblies, it does list 'Harness assemblies for electronic use manufacturing,'" it is the proper code because "a harness assembly and a cable assembly are *arguably* similar." OHA Decision at 4. (emphasis added). This type of reasoning is arbitrary in light of the fact that NAICS code 336413 deals specifically with aircraft parts and components and has been used in past procurements for special purpose cables that are to be used in an aircraft, while NAICS code 334419 is much more general in nature, does not specifically mention cable assemblies, and describes a component which may or may not be "arguably similar," to the component at issue in this Solicitation.

## C. STANDARDS FOR INJUNCTIVE RELIEF AND RELIEF REQUESTED

DCX's case meets each of the injunction factors applied by the U.S. Court of Appeals for the Federal Circuit. DCX has a high likelihood of success on the merits of its claims, and it will suffer irreparable injury in the absence of the requested injunctive relief. Moreover, an injunction will serve the public interest, without harming DSCR.

Therefore, DCX is entitled to a preliminary injunction prohibiting DSCR from awarding any contract under the current Solicitation.

In considering a motion for a preliminary injunction, this Court applies the following four criteria:

(a) Will the Plaintiff suffer a specific, irreparable injury if the procurement action is not enjoined?

(b) Will the Plaintiff likely prevail on the merits of its claim?

(c) The harm suffered by the Plaintiff, if the proposed action is not enjoined, outweighs the harm to the Government and third parties?

(d) Will the granting of the injunctive relief serve the public interest?

See Litton Sys., Inc. v. Sundstrand Corp., 750 F.2d 952, 955 (Fed. Cir. 1984); Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983); Magnavox Elec. Sys. Co. v. United States, 26 Cl. Ct. 1373, 1378 (1992). In determining DCX's entitlement to this relief, the Court of Federal Claims requires that DCX prove its case by a preponderance of the evidence. See Isratex, Inc. v. United States, 25 Cl. Ct. 223, 228 (1992); Quality Transport Serv., Inc. v. United States, 12 Cl. Ct. 276, 281 (1987).

### 1. DCX Will Suffer Immediate and Irreparable Injury if the Court Does Not Grant the Requested Injunctive Relief.

DCX will suffer irreparable injury if it is denied injunctive relief because it will be unable to submit a bid. The current NAICS code designation of 334419 has a 500 employee size standard, while the proper NAICS code of 336413 has a 1,000 employee size standard. DCX is a qualified small business eligible to bid on procurements set aside for 1,000 employees or less.

The denial of an opportunity for a contractor to compete on a procurement and to have its proposal fairly considered in accordance with the FAR is irreparable injury. See Magnavox Elec. Sys. Co. v. United States, 26 Cl. Ct. 1373, 1379 (1992) ("[the] [d]enial of the opportunity to obtain the present contract and profits derived therefrom . . . is an irreparable injury") (citing Quality Transp. Servs. v. United States, 12 Cl. Ct. 276, 282 (1987); Essex Electro Engineers, Inc. v. United States, 3 Cl. Ct. 277, 287 (1983)).

Clearly an inability to bid on this procurement, which could represent a significant amount of DCX's future business, represents an immediate and substantial harm to DCX. Furthermore, the arbitrary selection of an improper NAICS code will permeate DLA's future solicitations for these types of cables, resulting in continuing harm and prejudice to DCX.

The violations of regulation in this case have denied DCX an opportunity to compete in a fair and open procurement process. Thus, injunctive relief is proper.

**2. It is Likely that DCX Will Succeed on the Merits in This Litigation.**

As noted above, DCX's arguments with regard to violations of the FAR and the Code of Federal Regulations are clear, and DCX has a substantial likelihood of success on the merits.

**3. The Harm to DCX Far Outweighs the Harm to the Government or any Third Party.**

The balance of harm clearly favors DCX. The potential harm to DCX is substantial loss of future business. There is no harm to the Government since the closing date for bids has not yet passed, and the Government can easily issue an amendment to

the Solicitation changing the applicable NAICS code.

The Government benefits most from a fair and rational procurement procedure that ensures that only small businesses are awarded contracts set aside for small business. DCX will suffer substantial harm if it is unreasonably denied a fair and honest chance to participate in this competition. See Magnavox, 26 Cl. Ct. at 1384 (citing Isratex, Inc. v. United States, 25 Cl. Ct. 223, 231 (1992)). The damage that the public will suffer, unless the integrity of the procurement process (including small business set-asides) is preserved, is also substantial.

#### 4. It is in the Public's Interest to Grant the Injunction

The public's interest lies in the Government's ability to maintain faith in a fair and reasonable procurement process, and to ensure that the regulations governing the procurement process are properly followed. The public has an interest in seeing that Contracting Officers, whose duty it is to understand the NAICS code designations and to make well reasoned decisions regarding which designations best serve the purposes of a solicitation, carry out that duty in a rational manner. The public also has a substantial interest in the integrity of the SBA's appeals procedure, whereby OHA Judges are required to follow the regulations that govern their agency in reaching rational decisions.

## VI. CONCLUSION

For all of the above reasons, DCX respectfully requests that this Court grant injunctive and declaratory relief, prevent DSCR from proceeding with award of the contract to any party, and require the DSCR to issue an amendment to the Solicitation using the 336413 as the proper NAICS code designation.

Respectfully submitted,

DATE: February 26, 2008

Richard D. Lieberman
McCarthy, Sweeney & Harkaway, PC
2175 K St., NW, Suite 600
Washington, DC 20037
Tel: 202-775-5560
Fax: 202-775-5574
rlieberman@mshpc.com

Counsel to DCX-CHOL Enterprises, Inc.

Of Counsel
Nicole S. Allen
McCarthy, Sweeney & Harkaway, PC
2175 K St., NW, Suite 600
Washington, DC 20037
Tel: 202-775-5560
Fax: 202-775-5574
nallen@mshpc.com